CLARENCE L. JONES V. PHILLIPS PETROLEUM COMPANY, A CORPORATION. —186 S. W. (2d) 868. ·,/)

Kansas City Court of Appeals. March 5, 1945.

Don Emery, Rayburn L. Foster, R. B. F. Hummer, H. H. Booth and Hogsett, Trippe, Depping & Houts for appellant.

*E. E. Thompson, Alfred H. Osborne* and *Thompson & Osborne* for respondent.

BLAND, P. J.—This is an action for the malicious prosecution of a garnishment proceeding. There was a verdict and judgment in favor of plaintiff for compensatory damages in the sum of $1000 and for punitive damages in the sum of $2000. Plaintiff involuntarily remitted $500 of the compensatory damages, and defendant has appealed.

The facts show that on September 26, 1941, defendant obtained a judgment in the sum of $49 against one Clarence L. Jones, (not the plaintiff although a person of the same name) before a Justice of the Peace in Kansas City; that on October 21, 1941, a summons of garnishment, upon said judgment, was served upon Q. J. Bernard, doing business as Barney Bernard Company, as the employer of plaintiff. This garnishment was the subject of another suit for malicious prosecution by the plaintiff, wherein there was a verdict and judgment in favor of plaintiff, which judgment was appealed to this court and subsequently affirmed. (See Cause No. 20 511, decided at this sitting, but not yet reported.)

The facts stated in that opinion are substantially the same as those shown in the trial of the present case up to the time of the release of the Bernard garnishment by the defendant, and it will not be necessary to restate them in detail. After the release of that garnishment another summons of garnishment upon the judgment, was issued, on June 24, 1942, and served upon the Remington Arms Company, as garnishee. Plaintiff was, at that time, in the employ of that company.

In the other case it was agreed that Mr. Yancey, if present, would testify to a certain state of facts mentioned in the opinion therein; but at the trial of the present case Mr. Yancey testified in person, stating that an application was made to defendant herein by Clarence L. Jones, in August 1940, for a credit card, but before the defendant approved the account it made an investigation to verify the name, address and employment of the applicant; that the application showed that the applicant, at that time, was employed by the Burrows-Halsey Company, located at 820 Scarritt Building, Kansas City. There was no evidence concerning the nature of that employment.

At the trial of the present case the evidence also differed slightly from that in the other case, in that, whereas in that case, as in this, there was but one telephone, the one located at 2517 Benton Boulevard, appearing in the name of Clarence L. Jones in the Kansas City telephone directory; in this case it appears that, from June 1, 1942 to July 22, 1942, there was a telephone in the name of Clarence L. Jones living at 5320 Olive Street, not listed in the directory. This Clarence L. Jones and judgment debtor Jones were the same person. However, defendant had no knowledge of the existence of the telephone at the latter named address until after the present garnishment.

The facts further show that plaintiff, at the time of the present garnishment, was an employee of the Remington Arms Company at its local plant, at a weekly wage and, although bearing the same name, he was not, in fact, the same person as the judgment debtor Jones, and was not indebted to the defendant. Remington Arms Company promptly notified plaintiff of the service of the garnishment upon it and advised him that his wages would be held up unless the garnishment was taken care of. The following day, upon the representations of plaintiff's wife and his attorney, the attorney for the defendant, Mr. Searing, in charge of the case, directed the release of the garnishment, and a proper release was issued by the Justice of the Peace on June 30, 1942.

Plaintiff had never lived at 2517 Benton Boulevard or 5320 Olive Street, but he had lived at various places in Kansas City during the pendency of the Justice Court suit and the proceedings thereon, having lived in an apartment building at a different address in Kansas City at the time the present garnishment was run than at the time of the former garnishment. His name had never been listed in the Kansas City telephone directory.

Mr. Searing, attorney for the defendant, testified that after the release of the first, or Bernard garnishment, he wrote Clarence L. Jones, 2517 Benton Boulevard, several times, asking payment of defendant's account and received no answer; that he went in person to 2517 Benton Boulevard, either before or after the release of the first garnishment, but did not see Jones; that he had never seen, talked to or received a letter from either of the Joneses; that the only ad-

dress he had ever known for the judgment debtor Jones was 2517 Benton Boulevard, until he learned of the Olive Street address and telephone number after the Remington Arms Company garnishment.

Mr. Searing further testified that after writing debtor Jones, following the release of the Bernard garnishment, he received telephone calls from a woman, from time to time, stating that she was the wife of said Jones, including one call advising that Jones had moved to Rock Island, Illinois, and a later call advising him, to the effect, that Jones had returned to 2517 Benton Boulevard and was employed at the local Remington Arms plant; that the defendant's bill had not been paid because of some expense she and her husband had been to, but it would be taken care of later.

Mr. Searing further testified that he ran the Remington Arms Company garnishment some three months after the telephone conversation in which he was told that debtor Jones was employed at the local Remington Arms plant. He said that, before doing this, he telephoned the Remington Arms plant to inquire whether it had an employee there by the name of Clarence L. Jones, but was advised that the War Department did not give out information about employees.

The paymaster of the Remington Arms Company testified that the files of that company "indicated" that plaintiff was "the only Clarence L. Jones that we had."

Plaintiff's wife consulted an attorney about getting the Remington Arms Company garnishment released. She and her attorney called upon Mr. Searing. Plaintiff's attorney stated to Mr. Searing that plaintiff was not the judgment debtor Jones and, thereupon, Mr. Searing readily agreed to have the garnishment released. Plaintiff's wife testified that Mr. Searing treated her courteously. She did not know whether she called at the Justice office, but said that she and her attorney went from Mr. Searing's office to the Justice Court to complete the release of the garnishment. The garnishment was released on June 30, four days after the Remington Arms Company was served as garnishee.

Mr. Searing testified that, at the time he ordered the Remington Arms Company garnishment, he knew that the wrong man had been garnished once before, that is, in the Bernard Motor Company garnishment. Asked the question whether he was convinced that plaintiff "doesn't owe your company yet", he answered, "I have no conviction about it one way or the other. I am just trying to tell you and the jury honestly what I did".

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given because there was no evidence that defendant procured the issuance of the garnishment without probable cause; that probable cause affirmatively appeared, in that, there was identity of name between the judgment debtor Jones and

the plaintiff; that, in any event, there is no evidence that defendant procured the issuance of the garnishment without probable cause.

A similar contention was made in the other case and denied by us. Of course, under the circumstances of the present case, identity of name has little, or no bearing upon the merits of the running of the second garnishment, for the reason that defendant knew, at that time, that there were two men with the same name in the community and that a garnishment had already been run affecting the wrong one. Under the circumstances, a much greater care on the part of the defendant was required in running the second garnishment.

The evidence in this regard, shows that some woman called defendant's attorney by telephone, representing herself to be the wife of judgment debtor Jones, and stating that Jones was employed at the local plant of the Remington Arms Company. Objection was made by plaintiff to this testimony and defendant stated that the only purpose in introducing it was in relation to the question of punitive damages. At any rate, having already made the mistake, to the injury of plaintiff, defendant should not have relied upon the statement made by some unidentified person over the phone as to the employment of debtor Jones and, being unable to obtain any information from the Remington Arms Company, it should have made further investigation as to the facts. Showing the unreliability of information obtained in such a way over the telephone, the evidence tends to show that judgment debtor Jones was not, in fact, employed by the Remington Arms Company.

Complaint is made of the giving of plaintiff's instruction No. 1, which is worded identically as plaintiff's instruction No. 1 in the former case. From what we said in that case, there is no merit in the contention. The same may be said in reference to the complaint of the giving of plaintiff's instruction No. 2 which, in substance, was instruction No. 2 in the former case; also as to plaintniff's instruction No. 4, which was plaintiff's instruction No. 5 in the former case. The court also gave plaintiff's instruction No. 5, which is the same as plaintniff's instruction No. 3 in the former case.

Complaint is made that the verdict and judgment are excessive, both as to compensatory and punitive damages. The facts, in this connection, show that the garnishment was served and released between paydays, and the at plaintiff suffered no loss or delay in the payment of his wages. Plaintiff testified that he was worried about the garnishment; that he understood that a garnishment made a black mark against his record at Remington Arms Company. He said that during the previous February a garnishment affecting him had been run against Remington Arms Company by the Bentley Clothing Company, whom he did not owe, and that he did not know what would happen in view of a second garnishment. The Company had

a rule reading: "Repeated assignment of wages and garnishment will be considered reasons for dismissal".

Plaintiff further testified that he was embarrassed upon being advised by his immediate superior at the Remington Arms Company of the garnishment in the presence of his fellow employees. He further testified that when his wages were garnished Mr. Raby, an official, at Remington Arms Company informed him that it would be necessary to call at the paymaster's office; that plaintiff should get the matter "straightened out right away"; that "it was necessary to do so to keep from losing my job, that they wouldn't stand for garnishments"; that "I tried to tell him (Mr. Raby) that I didn't owe Phillips Petroleum Company anything, but of course he didn't know about that"; that he went to the paymaster's window and there were several others there; that he asked the paymaster "how about my check being tied up on this garnishment. Well, he says it has been tied up by Phillips Petroleum Company and that I must obtain a release for it immediately because they wouldn't stand for that kind of business at all, anyone garnished there was not of a job unless they got it straightened out immediately"; that the fact that the garnishment had been run against his wages by the defendant was disclosed in the presence of several men with whom he worked; that, "Well, they ribbed me a good deal about it, told me if I would pay my bills I wouldn't be garnished. Different ones around there ribbed me about it for quite awhile. It was very embarrassing. I had to work there. Q. What feeling and condition of mind did you have about your job there in June when you had been garnisheed and after the second garnishment had been run on you? A. I was very much worried about it because of course on the other garnishment I had found out that they wouldn't stand for that, so this was the second time and of course they wanted to know what had happened then, see. Q. Is it your belief and your condition of mind that those matters are charged against your record of an employee? A. Well, it makes a black mark against my record with the Remington Arms Company, of course".

After the release of the Remington Arms Company garnishment plaintiff procured a letter from his attorney explaining that plaintiff was not indebted to the defendant. The paymaster at Remington Arms Company testified and produced its records showing the garnishment in question, which included the letter from plaintiff's attorney addressed to the company, advising that the garnishment in question, run by the defendant, did not involve any indebtedness owed by the plaintiff. The paymaster testified that the letter had been presented to him by the plaintiff and had been obtained at his suggestion; that he had suggested that it be procured for the files; that the letter would indicate on the records of the company that the

garnishment had been "mis-placed". This evidently cleared plaintiff's record so far as the company was concerned.

While, the judgment covering compensatory damages, even after the *remittitur* of $500 is ample, the trial court, having cut the award on this account in two, we are reluctant to order a further reduction. [Gieseking v. Litchfield Madison Ry. Co., 127 S. W. (2d) 700; Stalmach v. Saul, 50 S. W. (2d) 721.]

We do not feel that we would be justified in reducing the judgment for punitive damages. This was the second time that the defendant ran a garnishment without adequate investigation and defendant, in the present case, did not have even the excuse of relying upon the assumption that identity of name indicated identity of person.

The petition alleges that plaitniff's attorney's fees in the garnishment proceeding were $15 but the evidence shows them to be $50. However, as there was no objection to the testimony that the fee was $50, the petition will be considered as amended to conform with the proof. [Young v. City of St. Louis, 178 S. W. (2d) 641; Ehrlich v. Mittelberg, 252 S. W. 671.] The judgment is affirmed. All concur.