[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT AND MOTION TO SET ASIDE VERDICT (#163)
On December 22, 1993, a jury of six returned a plaintiff's verdict following about two weeks of trial and three hours of deliberation. The plaintiff, in behalf of her decedent-son, sought an award of money damages based on an alleged vexatious suit brought by the defendant, a practicing attorney, who in bringing suit represented a client who was the decedent's former employer.[1]
In her complaint the plaintiff sought recovery, in the alternative, on the statutory (Sec. 52-568, Conn. Gen. Stat.) and common law remedies. The verdict, which was based on the statutory cause, awarded the plaintiff $250,000 compensatory damages. Because the jury found that the defendant acted "with a malicious CT Page 1043 intent," the Statute (Sec. 52-568(a)(2)) obligates the defendant to pay treble damages. The total sum awarded to the plaintiff, therefore, is $750,000.
The defendant has filed a timely motion to set aside the verdict and for judgment notwithstanding the verdict. P.B., Sec. 320; 321. In substance, the grounds of his motion are as follows:
 (1) that the plaintiff, as a matter of law, failed in her burden of proving that the defendant acted without probable cause, in that the evidence presented by the plaintiff in her case in chief established that the defendant had knowledge of facts which were sufficient to justify a reasonable man in believing that there were reasonable grounds for instituting the underlying action. Vandersluis v. Weil, 176 Conn. 353, 356 (1978);
 (2) that the jury was allowed to consider provisions of Sec. 31-51m of the General Statutes, the whistle-blower statute so-called, as it related to issues of probable cause and motive, when its relevancy should have been limited to the issue of motive only; and
(3) that the verdict was excessive.
1. The evidence which the plaintiff presented in her case in chief showed her decedent to be a 22-year old, learning disabled high school graduate who was employed by the defendant's client, Cryodyne Company, as a maintenance worker. An official of Cryodyne told the defendant that the decedent had breached the terms of an Intellectual Property Rights and Non-Disclosure Agreement[2] by giving to a Mr. and Mrs. Warner a "minimal description" of a process as to which Cryodyne had a proprietary interest. The Warners thereafter described "an aspect of the process" in a letter written to the Department of Environmental Protection (DEP) complaining of Cryodyne's waste disposal methods. The defendant knew before instituting suit against the decedent that termination of his employment, which covered, in all, about a three-month's period, occurred shortly after his disclosure and the letter to DEP. The defendant also knew that DEP was conducting an investigation of the complaint. Although his client gave him no information on which to base any claim for present or future damages to the Company by virtue of the claimed breach of contract, CT Page 1044 the defendant in his complaint against the decedent sought an award of damages and injunctive relief.
The plaintiff called Attorney William Gallagher as an expert witness. Attorney Gallagher opined that the defendant had failed properly to research and investigate the issue of probable cause. Knowing that a complaint had been made to DEP and that the decedent was terminated shortly thereafter should have, in Gallagher's view, broadened the scope of investigation and heightened the defendant's need to scrutinize the issue. Under the circumstances, including an absence of evidence of damages to the Company, the defendant should have been suspicious as to his client's claim that an aspect of a trade secret had been revealed.[3] The fact that the defendant did not advise his client that a counterclaim by the decedent was likely; a fortiori, that he was not even aware of the statutory (Sec. 31-51m) basis therefor; further underscores the poor quality of the defendant's research and investigation of the probable cause question. In short, it was Attorney Gallagher's opinion that the applicable facts required the defendant to do more before reaching a conclusion that there existed probable cause to support the underlying action.
On the contrary, it is the defendant's position that the facts on which he relied "were more than sufficient to establish that the lawsuit . . . was supported by probable cause," and that his motion for directed verdict at the conclusion of the plaintiff's case should have been granted. In ruling on his claim the court should consider the evidence, including reasonable inferences therefrom, in the light most favorable to the plaintiff. Chanosky v. City of Building Supply Co., 152 Conn. 642, 643 (1965). "The verdict [should] be set aside and judgment directed only if . . . the jury could not reasonably and legally have reached their conclusion." Bound Brook Association v. Norwalk, 198 Conn. 660, 667 (1986).
Applying the above formula, the trier of fact could have found that what the decedent disclosed was an illegal dumping practice by his employer; and that in so doing, neither the secret process nor any material aspect thereof was compromised. Likewise, the jury could have inferred that Cryodyne's motive in terminating the decedent's employment and in bringing suit was punitive and unrelated to the terms of the Non-Disclosure Agreement.
While a client's improper motive is not, without more, imputed to the attorney; Vandersluis v. Weil, supra 361; the jury could have found that the "[d]efendant should have made further investigation CT Page 1045 than he did make of the actual facts in the matter before proceeding to institute [suit]." Zitkov v. Zaleski, 102 Conn. 439,446 (1925). The defendant in assessing the validity of his complaint must have a "good faith belief in the facts alleged;" DeLaurentis v. New Haven, 220 Conn. 225, 256 (1991); i.e., the credibility of the information related to him by his client. He must reach his conclusion as to probable cause "by an application of the factual and practical considerations of everyday life on which reasonable and prudent men act." Rzucidlo v. Newtown Realty, Inc., 30 Conn. Sup. 337, 341 (1974). Belief alone in the existence of probable cause, no matter how sincere, is not enough, "since it must be based on circumstances which make it reasonable." Zenik v. O'Brien, 137 Conn. 592, 597 (1951). As one court defined the duty:
 "It is obvious that the client must rely upon his lawyer to make a reasonable investigation of his case. Likewise, the attorney must accept the obligation to conduct a reasonable investigation in an attempt to find what the true facts are before filing a civil action on behalf of his client. In determining probable cause in a malicious prosecution action brought against an attorney, a jury may properly consider not only those facts disclosed to counsel by the client but also those facts which could have been learned by a diligent effort on the attorney's part." Nelson v. Miller, 607 P.2d 438, 448-49 (Kans. 1980); see also, Haswell v. Liberty Mut. Ins. Co., 557 S.W.2d 628, 634-35 (Mo. 1977).
That the defendant would have reached a different conclusion regarding probable cause had his research and investigation attained a higher quality level is, in the view of the court, more than just possible. When the facts which underlie the issue are in dispute, as is here the case, resolution thereof should be submitted to the jury as a mixed question of fact and law. DeLaurentis v. New Haven, supra 252-53. Accordingly, the motion for directed verdict was denied.
2. After reading pertinent provisions of Sec. 31-51m of the General Statutes regarding an employer's prohibited discharge of an employee, the court charges the jury as follows:
"The statute is only relevant on the issue of whether CT Page 1046 the defendant, Attorney Tighe, had probable cause to file suit against Robert Yatsenick, and more particularly, whether his lack of awareness of this statute, if that's your finding, casts any relevant doubt on the quality of his investigation of all of the underlying facts, before he instituted the lawsuit. You can — you may consider this statute in deciding whether the defendant had probable cause to file suit against Robert Yatsenick. You may, but you do not have to."
The above instruction was given in connection with testimony of Attorney Gallagher that any competent attorney had a duty, under the circumstances, thoroughly to research and investigate the issue of probable cause as it related to bringing the underlying lawsuit. Among other things, it was Gallagher's belief that the defendant should have apprised his client of the ramifications of the statute and possible effect of a counterclaim based on the questionable objective of the action. Admittedly, the defendant gave no such advice until after the counterclaim was filed, and there is indication that until then he was not even aware of the statute.
In the opinion of the witness, as hereunbefore set forth, the poor quality of the defendant's research and investigation, more particularly his disregard of the whistle-blower statute and its potential consequences to Cryodyne, raised material factual issues as to a central issue in the case; viz., want of probable cause. It was in this context that the court's instructions were given, and appropriately so.
3. "When the amount of damages awarded is at issue," as the defendant correctly points out, "the relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice, or mistake." O'Brien v. Seyer, 183 Conn. 199, 208
(1981). When the award of damages is excessive based on the applicable law and evidence, the court has both the right and duty to set aside the verdict. Buckman v. People Express, Inc.,205 Conn. 166, 174 (1987). In its ruling, however, the issue is not whether the court would have awarded a lesser amount, but, rather, whether the total amount of the award falls within the necessarily flexible limits above described. Gorczyca v. New York, N.H. H.R. Co., 141 Conn. 701, 703 (1954). CT Page 1047
The injuries which the plaintiff's decedent claimed to have sustained consisted of mental and emotional suffering only. There is a paucity of evidence that those injuries were of a severe nature. There were no physical manifestations during the 14-week period before his death. No medical expenses were incurred for treatment thereof, nor is there an indication that anyone even suggested the need for treatment. The sole item of special damage is an attorney's fee of approximately $3,200 for legal services rendered in connection with the underlying action.
The court is not unmindful that monetary awards that are the product of the type of anguish and turmoil suffered by the decedent are not readily ascertained, and deference should be given when "a number of individuals have unanimously agreed that a specific dollar figure best reflects [those injuries]." Wochek v. Foley,193 Conn. 582, 588-89 (1984). Likewise, the court recognizes that litigants have a constitutional right to have such issues resolved by the jury. Caciopoli v. Acampora, 30 Conn. App. 327, 331
(1993). Awards in other cases, although affording no decisive criterion, may offer some guidance in determining the range of damages by which the instant verdict may be tested. Gorczyca v. New York, N.H. H.R. Co., supra 705. Nonetheless, the plaintiff through counsel points to no case which might provide such guidance.
The tragic circumstances of the decedent's suicidal death were a part of the plaintiff's evidence. Moreover, it was her testimony that on motion of the defendant as Cryodyne's attorney she was substituted, following the death of her son, as party defendant in the underlying action which continued until its eventual withdrawal.
In its charge the, court instructed the jury as follows:
 "You must not allow sympathy to, or any such extraneous consideration, to influence your thinking to the point where it affects the verdict you render. In that connection I charge you that you may not consider the suicidal death of Robert Yatsenick in evaluating the facts or in your award of damages. Mr. Yatsenick's death and the cause of his death are not issues in this case."
Notwithstanding the instruction, to which no exception was CT Page 1048 taken, it is the court's finding that the jury's verdict, insofar as its award of compensatory relief, falls well beyond the limits of fair and reasonable compensation. In the view of the court, the conclusion is inescapable that the jury disregarded the court's instruction and was influenced by a high degree of sympathy and partiality which favored the plaintiff.
The verdict is excessive as to the award of compensatory damages. Accordingly, it is ordered that the verdict be set aside unless within fifteen days of the filing of this decision the plaintiff shall file with the Clerk of Court a certificate of acceptance as to a remittitur in the amount of $100,000. If such certificate is so filed, judgment may enter upon such filing in the sum of $450,000,[4] together with taxable costs. If such certificate is not filed within the time required, the verdict is set aside and the court orders a new trial on the issue of damages only.
The verdict, including a finding of actual malice, does not indicate any disagreement among the jurors as to liability. It is the court's finding that the issue of damages is separable from the issue of liability and malice and that limitation of a new trial to the compensatory damages issue only will not work injustice to the other issues or the case as a whole. DeLaurentis v. New Haven, supra 268.
It is so ordered.
GAFFNEY, J.