**Mary Jeanne HOENE, Respondent,**

**v.**

**ASSOCIATED DRY GOODS CORPO-
RATION, Appellant.**

**No. 55885.**

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

Motion for Rehearing or Transfer to Court
En Banc Denied Dec. 11, 1972.

William K. Stanard II, John H. Stahlhuth, Clayton, for respondent.

John J. Horgan, R. E. Keaney, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for appellant.

HENRY I. EAGER, Special Commissioner.

In this action for malicious prosecution plaintiff recovered a verdict of $500 actual damages and $20,000 punitive damages. Defendant duly appealed. The notice of appeal was filed here before the effective date of the amendment increasing the jurisdiction of the Courts of Appeal to $30,000, Laws 1969, 3rd Ex.Sess., p. 110, § 1; and, of course, it was filed prior to the Amendment of our Judicial Article, effective January 1, 1972. We have jurisdiction.

Defendant insists that a verdict should have been directed for it, so we shall need to relate the evidence in some detail. Plaintiff, 35 years of age at trial, was not regularly employed but did occasional baby-sitting; she lived with her parents in St. Louis County. She had suffered cerebral palsy at birth and, although her intellectual ability was apparently not impaired, she still had some difficulty in walking and in speech, and an involuntary waving of her "extremities." The following is a digest of her testimony. On November 21, 1967, she had gone to downtown St. Louis and had done some shopping; she had taken from home one shopping bag and her purse or handbag, and she bought another shopping bag downtown. In addition to other articles, she was carrying a pair of gloves which she had bought about a month previously at Stix, Baer & Fuller (admittedly a unit of this defendant) and which she intended to return. Those gloves with the sales ticket therefor were received in evidence as exhibits. She then took a bus to the River Roads Shopping Center, picked up a prescription and proceeded to the mall at Stix, Baer & Fuller, which we shall hereafter refer to as "defendant." She had delayed returning the gloves because of a fall which had injured her "tail-bone." She sat on a bench on the mall for a short time, and then removed the gloves and their sales ticket from her shopping bag, held them and a shopping bag in her right hand with her purse over her arm and proceeded into the store. She saw gloves on display on a counter or cart which looked like hers and went there to examine the price, as she knew she would not get back the original cost of $5.00 if the same gloves were on sale. Reaching the cart, she put down the shopping bag from her left hand, and, with her left hand picked up a pair of gloves from the counter which looked like hers. She did not take those out of their enclosing cover. She found that they were like hers and that they were not marked down; her own gloves were still in her right hand. She looked around for sales people and only saw two with about seven customers waiting, so she decided to do further shopping and come back. Thereupon she leaned down and put *her* gloves, the ones she had brought with her, and the ticket into the shopping bag on the floor, leaving the ones she had looked at on the counter. She then walked off toward the elevators. Near that point, as she testified: a man grabbed her arm, flashed something at her, and said, —"You took something I seen it." That he put his hand in her shopping bag, pulled out her gloves, and said,—"You just took these"; that she replied, "No, I didn't," and tried to show him her sales ticket; that her gloves were still in their cellophane wrapper and she told him that she was bringing them back;

that the man repeated,—"Yes you did, I saw you," grabbed her by the arm again and said, "Come with me"; she "kind of" pulled away; a younger man came up and took her downstairs to a "security" office, where there was also a "security lady"; that the first man was Mr. Shelvy and the younger man Mr. Schweppe. Shelvy was gone for a short time but returned. Plaintiff got out her Stix, Baer & Fuller sales ticket and showed it to them; it showed a charge to plaintiff's father of a pair of gloves on 10/27, "regular," a sales number, plaintiff's signature for the article, and the price of $5 plus fifteen cents tax. Plaintiff further testified that she first showed this to Schweppe "downstairs," that he said nothing, and that Schweppe showed it to Shelvy when he came to the security room; that the latter looked at it, threw it on the desk and said,—"It isn't dated today"; that she tried to tell him why it was not dated that day, but "He wouldn't listen"; that she was excited; that she was positive that Shelvy saw the sales slip; that they "went into" her shopping bag and purse without her permission, and asked her age; that she asked,—"Just what is all this about"; that thereupon Shelvy said,— "She's being uncooperative. Call the police," the woman present agreed and added, —"We haven't got time to fool with. it," and Shelvy called the police. Plaintiff denied that she offered to pay for the gloves. Shelvy was the "security manager" of defendant. An officer arrived, took her into custody, and took her to the station in a marked police car, where she was questioned, photographed and fingerprinted; her personal belongings were all put in a property bag; that the woman security officer, admittedly sent by Shelvy the security manager, went over to the police station and signed an affidavit charging plaintiff with the theft of property of a value less than $50; that she was permitted to make a telephone call and later was released on bond and her property returned to her except her gloves. She employed counsel whom she paid $250, and was tried in the police court of Jennings; defendant's employees and the police officer testified against her. She was acquitted.

From plaintiff's testimony and that of her physician there is a fair inference that plaintiff's impaired physical condition was aggravated by this affair and that she has required additional medication. There is no claim that the verdict of $500 for actual damages is excessive.

For defendant, James Shelvy, defendant's "Security Manager," testified: that he saw plaintiff enter the store, walk to the glove cart carrying a shopping bag and a purse with "something" in the other hand, but he did "not recall" what it was; that, at the glove cart, she put her shopping bag on the floor, selected a pair of gloves in a cellophane bag, bent down, and placed them in her shopping bag; that she then picked up the bag and walked away; that he stopped her near the elevators some distance away; that he identified himself to her, did not touch her, and asked her to go to the security office; that Rita Hucklenbroich, a woman security officer, was very close by when he stopped plaintiff; that he was called to the telephone and next saw plaintiff in his security office with the woman officer and Mr. Schweppe, another security agent; that plaintiff produced a sales ticket issued by defendant for a pair of gloves dated approximately one month earlier, and he identified plaintiff's Exhibit 1 as that ticket; that he called the Jennings police, that an officer came and took charge of plaintiff, and that he instructed Rita Hucklenbroich to go over and sign an affidavit charging plaintiff with "taking merchandise without paying."

Donald H. Schweppe remembered little of the foregoing occurrences. Rita Hucklenbroich, in substance, testified: that she saw plaintiff put down her shopping bag, look at the gloves on the counter, pick up a pair, bend down and "shove" *the gloves* into a shopping bag; that plaintiff walked away, the witness followed, signalled to Mr. Shelvy, and that he stopped plaintiff

and identified himself as a security officer; that plaintiff made no statement; that plaintiff was taken to the security office where she said that she had bought the gloves and, upon request, produced a "sales check" from her purse; that the witness saw this and she identified Plaintiff's Exhibit 1 as that sales check; that plaintiff took the things out of her bag and put them on a chair; that they did not go into her bag or purse; that plaintiff said, when the police officer came in,—"Well, can't I just pay for it?" The officer who arrested plaintiff also testified to such a question from plaintiff. He also verified the procedure followed at the police station as related above. The affidavit charging plaintiff with theft, the information, the warrant for arrest, a written explanation of constitutional rights, the police record of arrest, and an unsigned "statement" of the arrest or of guilt on Stix, Baer & Fuller stationery were all in evidence as exhibits. The "statement" was apparently written to be signed by the suspect. Also received were copies of monthly statements or bills to plaintiff's parents, one of which included the gloves purchased on October 27, 1967. The Assistant City Attorney of Jennings testified that he issued the information on review of the police report and the statements on file.

■ On this evidence defendant asserts as its first point that a verdict should have been directed for it (a), because plaintiff failed to prove that defendant acted maliciously and without reasonable grounds; and (b), because there was "no conflict in the evidence as to probable cause * * *." Neither party claims that § 537.125, RSMo 1969, V.A.M.S. on "Shoplifting" is applicable. Counsel cite sundry cases stating the general principles applicable in malicious prosecution suits. None of these are close enough on the facts that we need to discuss them individually. Generally, the principles are: that the elements to be proved in such a suit are: (1) the commencement of a prosecution against plaintiff; (2) its legal causation by defendant; (3) its termination in favor of plaintiff; (4) the absence of probable cause therefor; (5) the presence of malice; and (6) damage to plaintiff therefrom. Knost v. Terminal R. Ass'n of St. Louis, Mo.App., 222 S.W.2d 593; Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S.W.2d 503; Bonzo v. Kroger Grocery & Baking Co., 344 Mo. 127, 125 S.W.2d 75. In this case there can be no question about the existence of (1), (2), (3) and (6). The issues are solely want of probable cause and malice. The burden is upon plaintiff to prove these. Knost, supra; Kvasnicka, supra. Where want of probable cause is shown, malice may be inferred by the jury. Stubbs v. Mulholland, 168 Mo. 47, 67 S.W. 650; Randol v. Kline's, Inc., 332 Mo. 746, 18 S.W.2d 500. When one institutes a prosecution, he is held responsible not only for all facts which he knows at the time, but also for all other pertinent facts which he could have ascertained by due diligence prior to instituting the prosecution. LaChance v. National Pigments & Chemical Co., Mo. App., 104 S.W.2d 693; Jones v. Phillips Petroleum Co., Mo.App., 186 S.W.2d 868; Stubbs, supra. And this has been held to include an investigation of the plaintiff's prior reputation, when the facts and circumstances so indicate. Randol, supra; LaChance, supra; Stubbs, supra. While an acquittal on the merits is not in itself prima facie proof of a want of probable cause, Knost, supra, it constitutes some evidence thereof and is to be considered with the other facts and circumstances. Randol, supra; Stoker v. Elniff, Mo.App., 33 S.W.2d 977. It has been said that since proof of a want of probable cause is proof of a negative, slight evidence is sufficient. Randol, supra. Here, since plaintiff had a verdict, the appellate court considers the evidence from the viewpoint most favorable to plaintiff. Coleman v. Ziegler, Mo. App., 226 S.W.2d 388.

■ If the testimony on any material part of the evidence showing the existence or want of probable cause is in conflict,

that becomes a jury issue and a submissible case has been made. Randol, supra; Polk, supra; Coleman, supra; Jones, supra; LaChance, supra; Stoker, supra. See also Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43. Here, plaintiff testified: that she was carrying the gloves which she had previously bought in her right hand; that she picked up the others with her left hand and then laid them down, putting *her own gloves* back in her shopping bag on the floor. If Shelvy and Rita Hucklenbroich were as close as one said, 5–10 feet away, they certainly could have seen that the gloves plaintiff put into the bag were the ones she had been carrying all the time and not the ones from the counter. And Shelvy testified that when she came in she was carrying *"something"* in her *"other"* hand, besides the shopping bag and purse. A direct conflict thus was developed upon a primary and highly material fact, i. e., whether plaintiff *did* the thing which caused the whole affair. In Polk, supra, the conflict was as to whether defendant's agents *saw* plaintiff break into a box car; they said they did, and plaintiff testified he did not do it. The Court held that the existence or want of probable cause was for the jury. For other cases holding that upon a conflict in the evidence bearing on the issue of probable cause the question is for the jury, see: Randol, supra; Coleman, supra; Jones, supra; LaChance, supra; Stoker, supra; Dawes, supra. Defendant's counsel seem to overlook the fact that it is the privilege of the jury to believe or disbelieve any witness. Here, if it disbelieved Shelvy and Hucklenbroich, there could be no probable cause. Defendant says that a mere conflict as to "how the incident or incidents occurred" does not create a conflict on probable cause. This was not a mere conflict as to "how"; it was a direct conflict as to *what* plaintiff did, the very act which was the basis of her arrest and prosecution. And these were the very agents who instituted the prosecution.

The case of Randol v. Kline's, supra, is closely analogous to this one in many respects and fully justifies our conclusions. We consider also the subsequent events: the production of plaintiff's sales ticket showing a regular account of her father at the store and listing specifically the purchase of a pair of gloves at the price in question; the complete denial by plaintiff of taking the gloves from the counter; the utter disregard of that disclosure; the total failure to investigate her status or reputation; the failure to consider her physical and excited condition; the fact that it was never shown in the evidence that plaintiff had two pairs of gloves in her possession when apprehended (it is not really controverted that she brought one in); the apparent rush to call the police and send the woman agent over to sign a complaint; the fact that she had a little "Stix" paper bag in her shopping bag or purse in which she had brought her gloves back; we may reasonably infer that this was visible to the agents, as both sides indicate that her possessions were all laid out. If plaintiff's testimony was believed, as it obviously was, and if defendant's agents were in position to see what she was doing, which they say they were, then they did *not* see her take a pair of defendant's gloves and had no probable cause to believe that she did. And the defendant is chargeable with their knowledge. On this evidence we hold that plaintiff made a submissible case of a want of probable cause and that defendant's motion for a directed verdict at the close of the evidence was properly overruled.

Defendant next complains of the denial of its motions for a mistrial. We shall state the basis of these complaints as briefly as possible. We state at the inception, however, that plaintiff's counsel brought no credit to himself by his comments, questions and actions. The first complaint arose during the direct examination of plaintiff when she stated that the police officer had a "paper" that he had gotten from Mr. Shelvy with her name and address and phone number on it. Counsel for plaintiff asked: "Mr. Horgan, do you

have such a paper?" He then followed this up with: "I was just asking Mr. Horgan. He can say its none of my business if he doesn't want to tell me." The Court then called counsel to the bench, which was where the interrogation should have occurred in the first place; counsel for defendant first objected to the question and stated that he did not know whether there was such a paper or not; he then moved for a mistrial because the question made it appear to the jury that he was hiding something. The Court noted that the "paper" was last shown to be in the officer's possession, and much colloquy ensued. Upon inquiry by the Court counsel for defendant also stated that he wished the question "expunged." The Court proceeded to tell the jury to disregard the "statement" of counsel and to give it no consideration. It denied the motion for mistrial. It appears from plaintiff's testimony that the "paper" was nothing vital, and we do not feel that the improper question created sufficient prejudice to require a mistrial. The paper was never produced or referred to again before the jury.

■ As defendant says, it has been held that counsel should not ask admissions of opposing counsel in front of the jury. Wilkerson v. Missouri Pacific R. Co., Mo. App., 69 S.W.2d 299; there the only request was for a reprimand with which the Court complied. But it is the universal rule in Missouri that in cases of misconduct, improper argument, prejudicial evidence or other improper incidents in the course of a trial, the necessity of the drastic remedy of a mistrial is a matter resting in the sound discretion of the trial court and that, absent a manifest abuse of that discretion, the appellate court should not interfere. Gathright v. Pendegraft, Mo., 433 S.W.2d 299; Flanigan v. City of Springfield, Mo., 360 S.W.2d 700; Harris v. St. Louis Public Service Co., Mo., 270 S.W.2d 850; Brownridge v. Leslie, Mo., 450 S.W.2d 214; Golian v. Stanley, Mo., 334 S.W.2d 88. There is nothing in this matter to constitute reversible error.

■ The next complaint under this point is that counsel "badgered" the witness Shelvy, made audible "gasps," threw down his pencil on the table, and "grimaced and gestured" to the jury. Such actions, if done, were not consonant with the dignity with which a trial should be conducted. The record does show that counsel asked the witness if he "cared to answer the question" immediately after it had been read, stated that he didn't like to "badger" the witness, asked the Court to direct the witness to answer a question when he had essentially answered it, interrupted the witness, asked him what he did before he took up "diplomacy" twelve years ago, and made, perhaps, other frivolous remarks. After the testimony of the next witness (Donald H. Schweppe) who recalled essentially nothing of consequence, counsel for defendant addressed the Court, referred to the comments, grimaces, gasps and sighs of counsel for plaintiff during the testimony of both witnesses, and moved for a mistrial, recalling also plaintiff's request of defendant's counsel for the "paper" already discussed. The Court stated: "I haven't heard anything up here," but that he would not tolerate comments by counsel about a witness' testimony; that if such things happened he was not aware of them. The Court had ruled on objections as made and no complaint is made in the brief on those rulings. The Court obviously meant that he had not seen or heard any grimaces or gasps or gestures. Counsel's statement does not prove them. It is perhaps unfortunate that, if such things occur, they cannot be preserved. The motion for a mistrial was denied. None of the foregoing, on this state of the record, is sufficient to convict the trial court of a manifest abuse of discretion.

■ The last such complaint is of counsel's actions in the cross-examination of Rita Hucklenbroich. Counsel had been asking her for an estimate of the number of shoplifters she had seen in ten years. The witness started to answer and counsel said: "I hope you will. . . . . I

never heard such a pattern of evasive answers in my life, if the Court please . . . ." The Court then stopped the proceedings by saying: "Just a minute, now!" and called counsel to the bench. Further colloquy occurred, counsel offered to "withdraw" his remark, counsel for defendant objected to the statements impugning the witness and moved again for a mistrial. The Court said that the comments were not proper and that counsel had no right to argue his case at that time, and that if it occurred again he would sustain a motion for mistrial. The motion for a mistrial was denied. Counsel for defendant asked no other relief. We note again, that this conduct was improper and counsel undoubtedly knew it. However, the ultimate question is the effect on the jury, and, absent abuse of discretion, the trial court's ruling must stand. We do not find such abuse. Nor do we find that the cumulative effect of these incidents is sufficient to justify us in reversing the trial court.

 The last point made is that the amount of the verdict for punitive damages is so large as to indicate passion, bias and prejudice, as stimulated by counsel's actions. Defendant does not ask a remittitur. We have held that counsel's actions did not constitute reversible error. We likewise hold that the amount of punitive damages awarded, considered in the light of such actions, is not ground for reversal. As said in LaChance v. National Pigments & Chemical Co., Mo.App., 104 S.W.2d 693, the matter of punitive damages is so "purely and peculiarly one for the jury's discretion" that only in an extreme case will the appellate court interfere. This point was raised in defendant's motion for new trial and denied by the trial court. In view of that discretionary action we are unable to say that this part of the verdict was caused by bias and prejudice on the part of the jury.

 Plaintiff's actual injury was included in the verdict for compensatory damages, of which defendant does not complain. Substantial injury was shown. It was said in State ex rel. St. Joseph Belt R. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, loc. cit. 356 (cited many times) that there need be no fixed relation between the amount of actual damages and the amount of punitive damages; the latter are inflicted as a punishment to deter defendant and others from similar acts, and they are "proportioned to the degree of malice, criminality, or contumely characterizing the act, to the age, sex, health, and character of the injured party, the intelligence, standing, and affluence of the tort-feasor, and other like circumstances." These principles have consistently been followed: Beggs v. Universal C I T Credit Corp., Mo., 409 S.W.2d 719; Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W. 2d 1083; Peak v. W. T. Grant Co., Mo. App., 386 S.W.2d 685; Gerharter v. Mitchelhill Seed Co., Mo.App., 157 S.W.2d 577; Walker v. St. Joseph Belt Ry. Co., Mo. App., 102 S.W.2d 718; Cook v. Housewirth, Mo.App., 254 S.W.2d 283. In some of those cases there was no evidence of specific damage; in others, remittiturs were granted, whereas none is asked here. We do not find from this record that the award of punitive damages was caused by "improper motives or a clear absence of honest exercise of judgment", Beggs, supra, hence the amount rested within the discretion of the jury, subject to review by the trial court. The point is denied.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.