Carlton B. SHAFFER,
Plaintiff-Respondent,

v.

SEARS, ROEBUCK AND COMPANY, Patricia Zoeller, Helen Scavatta, and Richard Ward, Defendants-Appellants.

No. 48444.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 13, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied
April 9, 1985.

Application to Transfer Denied
May 29, 1985.

Joel D. Monson, St. Louis, for defendants-appellants.

Stephen M. Glassman, Clayton, for plaintiff-respondent.

SMITH, Presiding Judge.

Sears, Roebuck and Company appeals from a judgment against it based upon a jury verdict awarding plaintiff $15,000 actual damages and $275,000 punitive damages for malicious prosecution. The three individual defendants also appeal from

judgments of $15,000 each for actual damages.

On July 25, 1981, plaintiff and his wife went to Sears Crestwood store to shop. They split up and plaintiff went to the hardware department while his wife went to the bathroom supply department. Plaintiff brought with him three small sockets for use with a ¼ inch drive handle. He had previously purchased these sockets from Sears Chesterfield store. The sockets were "Craftsman," Sears house brand. The Chesterfield store had not had the necessary drive handle in stock. Plaintiff had purchased a drive handle from another store but that handle would not fit the Craftsman sockets and he returned it. Plaintiff testified that he brought the sockets to make sure they would fit the handle he selected. Plaintiff needed the sockets and handle for his work as an electronics technician. After selecting a handle and testing it for fit on his sockets plaintiff moved to the aisle where sockets were displayed. He tried several other sockets on the handle to make sure they would also fit if he should need them in the future. He then returned those sockets to their bins and proceeded on to find a level. He inquired of a salesman where levels were located. At that time he still had his sockets in his hand. One of them may have been on the handle. After selecting the level plaintiff went to meet his wife. At some point he put his sockets into his pocket. Plaintiff and his wife paid for their purchase of over $30 with a credit card. These purchases included the socket handle and level but not the sockets. The sockets had a cost to Sears of under $3.00 and a retail value of approximately $5.00. As they left the store plaintiff and his wife were stopped by defendant Zoeller, a security guard employed by Sears, and another security guard. Upon request plaintiff produced the sockets from his pocket. One contained a partially smudged Sears label. The other two did not.

Zoeller had been located in an observation post above the hardware department at the time of plaintiff's activities in that department. Through a slit caused by raising the ceiling tile she had observed plaintiff. She believed she saw him remove three sockets from the bins and place them in his pocket. Photographs before the jury raise doubt that from her observation post Zoeller could identify the objects in plaintiff's hand or the number. Zoeller called for assistance and followed plaintiff as he was leaving the store.

Plaintiff was taken to the security office and asked about the sockets. He advised Zoeller that he had purchased them at the Chesterfield store from a young blonde man named John and had brought them from home. Zoeller called the police and reported the circumstances to the officer who arrived. The sockets were confiscated and plaintiff was allowed to leave. Several days later, after consulting with her supervisor, defendant Scavatta, and with Scavatta's knowledge, consent and authority, Zoeller signed a complaint against plaintiff at the police department. No investigation of plaintiff's explanation was undertaken by Zoeller, Scavatta or any other Sears employee.

Plaintiff located "John" at the Chesterfield store. John remembered the circumstances of plaintiff's purchase of the sockets. Plaintiff's attorney then wrote to defendant Ward, the operating supervisor at the Crestwood store, informing him of the identity of John and requesting additional investigation and a dropping of the prosecution. No further investigation was undertaken and the prosecution proceeded. Ward testified that it was Sears' policy to prosecute all suspected shoplifters whenever a security officer said she had seen a suspect take merchandise, regardless of other factors. There was also evidence that it was Sears' policy to proceed with prosecution whenever the police were called regardless of subsequent information. Plaintiff was found not guilty in the Crestwood Municipal Court on November 3, 1981. This suit followed.

After argument of the case before this Court the cases of *Sanders v. Daniel International Corporation*, 682 S.W.2d 803

(Mo. banc 1984) and *Lucas v. Daniel International Corporation*, 682 S.W.2d 820 (Mo. banc 1984) were decided by the Supreme Court. Following receipt of those cases we took this case off submission and requested additional briefs addressing the impact of those cases on the case at bar. We now reverse and remand.

It is safe to say that *Sanders v. Daniel International Corporation*, *supra*, created a monumental change in the law of malicious prosecution as it existed in this state. The court there recognized that "malice," the heart of the cause of action, consists of three distinct concepts delineated by the court as "degrees." The first is "malice in fact" or "actual malice" consisting of ill will, spite, personal hatred, or vindictive motives. The second is "malice in its legal sense" embracing any improper or wrongful motive. Under that concept the defendant "must either proceed with an improper or wrongful motive or consciously act with such wanton disregard for the rights of others that a jury may, but need not, infer from such conduct an improper motive." *Sanders, supra*, p. 810. The third degree of malice is "malice in law" consisting of a wrongful act done intentionally without just cause or excuse.

The Supreme Court recognized that under the case law of Missouri heretofore existing "malice in law" was sufficient to support an action for malicious prosecution and the award of punitive damages. Because the courts have stated that such malice could be inferred from proof of the element of want of probable cause for the prosecution, the cases in Missouri had virtually eliminated malice as a separate element of the cause of action bearing its name. See *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479 (Mo. 1972) [1–6]; *Sanders, supra*, [Footnote 3].[1] The court then held that in order to support a cause of action for malicious prosecution

the evidence must establish either legal malice or actual malice—malice in law is insufficient. It specifically held that MAI 16.01 improperly defines the element of malice in such actions. MAI 16.01 was used in the case at bar as required at the time of trial.

The Supreme Court also addressed the question of the degree of malice necessary to support punitive damages. It concluded that actual malice is necessary which it articulated as "prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member." With this resume of *Sanders, supra*, we turn to the case before us.

Initially we must address whether the *Sanders* case is applicable to this case which was tried prior to the decision in *Sanders*. Where a decision changes the substantive law it is applied to cases pending on appeal at the time the decision is issued. *Koebel v. Tieman Coal and Material Co.*, 337 Mo. 561, 85 S.W.2d 519 (Mo. 1935) [3–5]; *Roth v. Roth*, 571 S.W.2d 659 (Mo.App.1978) [25–27]. *Sanders* changes the law as to the mental state of the defendant necessary to support the cause of action. That is a substantive change and requires application of *Sanders* to the case at bar. Any question we might have on the question is resolved by the order of the Supreme Court in *Weniger v. Famous-Barr Company*, January 15, 1985, retransferring to us that malicious prosecution case for re-examination in light of *Sanders*.

Plaintiff asserts that because the evidence supported a submission under the new standard defendants were not prejudiced by submission under the now condemned MAI instructions. We cannot agree. The jury was permitted to find against defendants based upon a mental state which *Sanders* declares to be insuffi-

---

1. Want of probable cause had also come close to being a non-element as the cases had also held that while an acquittal on the merits is not prima facie proof of want of probable cause it is *some* evidence thereof. Since proof of want of

probable cause is proof of a negative, *slight* evidence is sufficient to prove it. *Hoene v. Associated Dry Goods Corporation, supra.* The difference between "some" and "slight" has not been clearly articulated.

cient to support liability. Neither we nor the parties know what degree of malice the jury found in rendering its verdict. We cannot assume its finding was of a higher degree than required by the instruction. The case must be reversed.

■ We turn to defendants' contention that the plaintiff failed to present evidence sufficient to make a submissible case under the newly articulated standards and that outright reversal is required. As to compensatory damages we believe the evidence to be sufficient. A jury could have found (but was not compelled to find) that one or more of the individual defendants proceeded consciously to prosecute plaintiff with such wanton disregard for the rights of plaintiff as to infer an improper motive. That finding is one of legal malice sufficient under *Sanders* to support the cause of action. Here defendants were advised before prosecution was instigated of plaintiff's explanation of the occurrence. They made no effort to check out his story which could have been done by simply contacting another of Sears employees. That employee in fact verified plaintiff's story. That, coupled with the physical viewing point of the store security officer who purported to see the theft, plaintiff's payment for items worth six times the value of what he purportedly stole, the condition of the items when taken from plaintiff indicating the possibility of prior purchase, and the inflexible policy of prosecution of Sears testified to, support a finding of wanton disregard of plaintiff's rights. In addition no investigation was conducted even after plaintiff's attorney advised the company of the results of his investigation, and prosecution was continued without further review.

■ We are not prepared to say that plaintiff established a case against each of the individual defendants under the new standard. But we cannot conclude he could not, now that he is aware of the quantum of proof necessary under the new standard. Where plaintiff provided sufficient proof under the law as it existed at the time of trial to make a case, we will not deny him a new trial because he failed to establish sufficient proof to meet a standard he did not know existed.

 As to the punitive damages, proof of actual malice is required. As defined in *Sanders* that proof is lacking. Wanton disregard sufficient for legal malice is not sufficient for actual malice under the *Sanders* case. We cannot say, however, that plaintiff would be unable to provide evidence of actual malice now that he is aware of the requirements of *Sanders*. We therefore remand for retrial on both compensatory damages and punitive damages.

Judgment reversed and cause remanded.

SNYDER and SATZ, JJ., concur.