Pamela SIMPSON, by Anita SIMPSON, Next Friend, Respondent,

v.

REVCO DRUG CENTERS OF MISSOURI, INC., Appellant.

No. WD 34983.

Missouri Court of Appeals, Western District.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Ressell W. Baker, Jr., Michael F. Saunders, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

John Kurtz, Popham, Conway, Sweeny, Fremont & Cungschu, P.C., Kansas City, for respondent.

Before CLARK, P.J., and PRITCHARD and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Fourteen year old Pamela Simpson by a next friend brought a five count petition against the appellant Revco for false imprisonment, malicious prosecution, battery, negligent hiring of a security guard and slander. As customers she and two friends entered one of Revco's stores in Kansas City and did some shopping. Simpson was carrying a 14 month old child. She put a box of diet pills in her coat pocket and while the friends were paying for items,

she walked past the cash register and sat on a bench just on the other side of a display, but still inside the front door. Facklam, a security guard, placed her "under arrest" for shiplifting and took her to the back of the store where an altercation occurred which both Simpson and Facklam say the other started. Facklam said she tried to hit him and run away. She said he grabbed her and threw her to the floor. (Afterwards she was seen briefly in an area hospital for bruises incurred in the scuffle.) As a result of the incident Simpson was handcuffed by Facklam and the Kansas City Police were called. A petition filed against Simpson in juvenile court was found in her favor and dismissed.

Simpson testified she intended to pay for the pills, when one of her friends finished checking out. This would allow the friend to take care of the child while Simpson paid. She was seated on the bench when Facklam approached, having made no effort to leave the store.

The slander count was dropped before trial. Simpson dismissed with prejudice the negligent hiring of Facklam count just before closing argument. This appeal by Revco is from a jury finding of $25,000 in actual and $100,000 punitive damages on the false imprisonment count and like amounts on the malicious prosecution count. A verdict for Revco was returned on the battery claim. Additional facts will be added to the appropriate point of error raised on Revco's appeal which seeks to set aside the total judgment of $250,000.

This case was submitted to the jury in June, 1983. Instruction MAI 23.07 was given, which paraphrased requires: 1) defendant instituted a judicial proceeding; 2) defendant acted maliciously and without reasonable grounds; 3) Damage to the plaintiff. MAI 16.01 was also given which defines "malicious" as not meaning hatred, spite or ill will, but the intentional doing of a wrongful act without just case or excuse.

■ After argument here, *Sanders v. Daniel International Corporation*, 682 S.W.2d 803 (Mo.1984), was handed down. In *Sanders*, the court modified the ele-

ments of and instructions on actual and punitive damages for this cause of action. The supreme court has now adopted a standard of legal malice to support an award of actual damages. To receive actual damages a plaintiff must show the defendant acted with an *intent* to cause the harm, and not merely commit an act that causes harm. A plaintiff must show the defendant acted primarily for a purpose other than bringing an offender to justice and acted without reasonable grounds. at 814. As a result the court said paragraph second MAI 23.07, "... should be amended as follows: 'Second, in so doing defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds.' "

■ The *Sanders* court changed to a higher degree the malice to support punitive damages. *Id.* 813. Actual malice or ill will, spite or grudge must be shown. As a result MAI 16.01 was amended to define "malice" as an act, "prompted or accompanied by ill will, spite or grudge ..." *Id.* 815.

■ The *Sanders* court did not state whether the changes it announced were to be applied retrospectively or prospectively, so that determination is based here upon whether the new rule is procedural or substantive. *State v. Walker*, 616 S.W.2d 48, 49 (Mo. banc 1981). If the new rule is substantive it is given both retrospective and prospective application. *Id.* at 49. Substantive matters generally create and define legal rights. Substantive law relates to rights and duties giving rise to a cause of action. Procedural changes aid and provide the machinery to protect substantive rights. *Barker v. St. Louis County*, 340 Mo. 986, 104 S.W.2d 371, 377 (1937).

It is arguable the *Sanders* changes could be either substantive or procedural. The eastern district in *Shaffer v. Sears, Roebuck and Company*, 689 S.W.2d 683, 686 (1985) construes *Sanders* as substantive and to be applied to a pending case on appeal. In *Shaffer* the court said any doubt on the question is resolved by the

supreme court's retransferring another case back to the eastern district to be re-examined in light of *Sanders*. (That case is *Weniger v. Famous-Barr Company, Supreme Court*, 686 S.W.2d 553 (Mo.1985). In *Lucas v. Daniel International*, 682 S.W.2d 820 (Mo. banc), a companion case to *Sanders*, and *Weniger*, the defendant, as here, made no direct attack on the elements of a cause of action for malice or the degree of malice to allow punitive damages. Those two cases, like this one were on appeal when *Sanders* was handed down. The motion for rehearing in *Lucas*, stressed the need for prospective application of *Sanders*, but was denied. Coupled with the transfer back of *Weniger*, leads to the conclusion the Missouri Supreme Court intended *Sanders* to be applied to cases then pending and retrospective in effect. This conclusion is reached despite the notion retrospective application should not be used, "except under the most compelling circumstances." *Keltner v. Keltner*, 589 S.W.2d 235, 240 (Mo. banc 1979). *See also State v. Shafer*, 609 S.W.2d 153, 157 (Mo. banc 1980) where language in an opinion, as was used in *Sanders*, to the effect the then applicable instructions "can no longer" be used or followed generally refers to prospective application.

The decision in *Sanders* mandates a reversal of actual damages on the count in this case of malicious prosecution and punitive damages in light of the instructional changes in *Sanders*, and a remand for new trial. This does not cause the same disposition for Simpson's count on false arrest which preceeded the malicious prosecution count, and if applied can stand independently of the count on malicious prosecution. The rest of this opinion will deal with the points raised on and applicable to false arrest.

Counsel on appeal for Revco did not participate in the trial. Their main point on appeal is a new trial should be granted because the trial judge allowed into evidence as sanctions under Rule 61.01, a list of arrest records and other unfavorable and inadmissible testimony about the guard Facklam. Since the case really turned on Simpson's word against Facklam's on what happened in the store, the question of, as sanctions, admitting the lengthly records of Facklam's arrests is most important and will be taken up first.

## I.

The case was filed in August of 1981, at which time Revco manuals as to shoplifting, security, hiring in general and the specific hiring of Facklam were requested for production by the plaintiff. After several postponements by Revco, in August 1982 the depositions of its employees were taken, but the promised documents were not produced. In October 1982, Simpson filed a motion to compel. In December of 1982, the court ordered the production of the documents after having met with counsel for each side. Within two weeks of trial, Simpson's attorney wrote to Revco's attorney again requesting the documents. The morning of trial, in April 1983, Revco brought the manuals, but did not bring Facklam's application saying the home office had reported it was illegible. It said the delay in production was an "oversight". The actual box and bottle of tablets taken from Simpson had long since been lost.

Just before trial the court "as a sanction for failure to produce these documents" and as relevant to this appeal, allowed Simpson to mention to the jury the lack of cooperation of Revco in producing the documents; struck from Revco's answer a blanket allegation of contributory negligence as causing any act of Revco. (Revco's answer was filed by still another set of attorneys who apparently did not participate at trial); and, while ruling against Revco's motion to keep out Facklam's arrest record, allowed Simpson to refer to his arrests and A.W.O.L. matter with the military.

The arrest records introduced were lengthly, showing speeding tickets, child abandonment, bad checks, fraud, fighting and AWOL. The juvenile court file contained a stipulation that when Facklam applied for a private officer's commission he

had been untruthful. He testified he had lied on the Revco application about his having been a high school graduate. His ex-wife testified he had struck her with his fist while she was pregnant and also he had used an alias on several occasions.

No objection was made at trial to any of the evidence, questions or argument related to the arrests, nor was any mention made of this impropriety in the motion for new trial or anytime before the case got here.

■ Revco argues the allowance of improper evidence as a sanction, foreclosed and excused Revco from raising an objection at trial when the improper evidence was introduced. Just as a criminal defendant can not let objection at trial go by because of adverse pre-trial rulings, Revco should not be excused from making objection at trial to preserve the matter. The basic question is whether as a sanction the admissibility of *arrest* records, and questions about them amounted to plain error.[1] The general rule is evidence of a prior arrest is inadmissible. *State v. Connell,* 523 S.W.2d 132, 135 (Mo.App.1975).

■ The company should have objected to this evidence prior to introduction and the objection could have been made continuing one and done out of the presence of the jury. Just because this action on the admissibility of arrest records was done as a sanction did not relieve the company of the responsibility of making a record to preserve the matter. Because the *court* took the action it did, did not relieve Revco of making an objection.

Revco was not precluded from timely objection to the admission of the evidence. This is analogous to the court having interrogated a defense witness—defense counsel has a duty to make timely objection. *Hilton v.*

*Crouch,* 627 S.W.2d 99 (Mo.App.1982); *Bova v. Bova,* 135 S.W.2d 384, 395 (Mo. App.1940).

Similarly, Revco cannot be excused for its failure to raise this matter in the new trial motion which would have allowed the trial court to then rule on the point now raised by it on appeal.

Rule 84.13(c) review must control the ultimate issue on the admissibility of the arrest records. Was "plain error" committed here in which hatred, passion or prejudice was engendered causing manifest injustice or a miscarriage of justice? There is no quarrel with the impropriety of the admission as a sanction of otherwise improper evidence. The matter not having been preserved by objection or in the motion for new trial results in plain error review which makes the decision here a close case. When the case came down to the plaintiff's word against that of Facklam, the introduction of a string of arrests of Facklam could be most prejudicial. Even under Rule 84.13(c) review, such information could so prejudice the defendant's case as to arise to a manifest injustice. Had plaintiff's counsel banged the defendant and its witnesses over the head with the most unfavorable character of Facklam's arrests, or unduly emphasized them in argument, plain error would have been the inevitable result. Such was not the case here.

The record here contains other references to Facklam's past and possible reflections upon his ability to tell the truth. Had Facklam otherwise been shown to be pristine, the introduction of the arrests would have kept this from having been a fair trial and would have worked a manifest injustice. Since the plaintiff's version of what happened, if believed, could support a ver-

---

**1.** As pertinent here Rule 61.01(d) reads as follows:

If the motion for inspection or production is granted and if the party against whom the order is entered fails to comply as stated, the court may, upon motion, make such orders in regard to the failure as are just and among others the following:

(1) An order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit him from introducing designated matters in evidence.

(2) An order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or, rendering a judgment by default against the disobedient party.

dict in her favor a miscarriage of justice was not possible. A manifest injustice was not the product of this evidence only because the following evidence was before the jury: 1) Facklam had lied on the Revco employment application and in his deposition as to his having graduated from high school, and about not knowing anyone at Revco; 2) been untruthful as to his work performance and reasons for leaving two previous jobs; 3) on several occasions used an alias; 4) hit his pregnant wife with his fist; 5) not told he was behind $8767 in child support; 6) a different version of the facts than those shown on the police report; 7) a stipulation from the Juvenile Court of Facklam's erroneous statements of prior law enforcement contacts on his application for a private officer's commission. These matters coupled with Revco's having: 1) lost evidence; 2) not produced Facklam's original application; 3) produced the company documents sought to be discovered the day of trial; and, 4) not presenting any clerks or other company witnesses to the event in question, could have left the jury with the impression Facklam and Revco were not credible in the case at bar.

As improper as the questions and comments about the arrests were, it was cumulative to evidence which showed Facklam's character was less than savory. The jury could have reached the verdict it did without having been presented the improper evidence. *Breshears v. Union Electric Company*, 373 S.W.2d 948, 952–53 (Mo. banc 1964).

■ As was said by this court in *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App. 1980), Rule 84.13(c) is rarely applied in civil cases and is reserved where a manifest injustice or miscarriage of justice has been caused. *State ex rel. Missouri Highway and Transportation Commission v. McNary*, 664 S.W.2d 589, 595 (Mo.App. 1984); *Davis v. Mathews*, 649 S.W.2d 256, 258 (Mo.App.1983). Though this is a close

case, it cannot be said the circumstances here engendered the hatred, passion or prejudice as a necessary prelude to plain error review. *Executive Jet Management, etc. v. Scott*, 629 S.W.2d 598 (Mo.App.1981). This point is denied.

Summarized and consolidated, the defendant Revco next asks for a reversal because the trial court would not allow it to amend its answer to include § 537.125 RSMo 1978,[2] and for striking as a sanction the contributory negligence defenses from its answer. The contention is this action left Revco defenseless on any issue of liability.

■ The problem is there is nothing to show preservation of these arguments. Contrary to Rule 78.07, nothing in the motion for new trial mentions these points raised in the brief here. Rule 78.07 is to give the trial judge the opportunity to correct errors without the delay, expense and hardship of an appeal. *Skelton v. General Candy Co.*, 539 S.W.2d 605, 610 (Mo.App. 1976). *See also Pruitt v. Community Tire Company*, 678 S.W.2d 424, 429 (Mo.App. 1984). Alleged instructional error arising out of these points is likewise not preserved. *Pruitt, supra*. As was done in the previous point plain error review under 84.13(c) will not prevail. The jury having returned a verdict favorable to Revco on the battery count considered with the entire record does not rise to a finding of plain error on the remaining counts.

■ Revco also challenges counsel for Simpson being allowed, as a sanction, to recite to the jury the delays encountered by her in receiving the manuals and documents requested in the motion. This issue, like the introduction of arrest records, is not preserved and is reviewed only as plain error. Normally, the court's discretion is enforcing rules of discovery will not be disturbed unless done unjustly, *In Re*

**2.** At the close of Simpson's case, Revco made an oral motion to add to the answer this statute, which, paraphrased allows a merchant who has reasonable or probable cause to believe a person has been shoplifting to detain them in a reasonable manner and to investigate without incurring a civil liability. The law also sets up a presumption of an intent to commit a wrongful taking of a person who willfully conceals unpurchased merchandise.

*Marriage of Dickey,* 553 S.W.2d 538, 540–41 (Mo.App.1977).

■ Although not deliniated as an order for failure to produce under 61.01(d), and under the applicable standard of review, the disregard of Revco for authority served as a proper basis for this order. *Cf. Portell v. Portell,* 643 S.W.2d 18, 20 (Mo. App.1982). Revco ignored its obligation under discovery rules, and after repeated notice made no attempt to comply until the day of trial. *Russo v. Webb,* 674 S.W.2d 695, 698 (Mo.App.1984). Since the rule allows for a judgment to be taken by default, plain error did not result from this order.

## II.

In its last point Revco points to the trial court's committing error for entering a total judgment of $250,000 as the judgment was as a result of bias and prejudice requiring "substantial remittitur" or a new trial. Revco says the excessive amounts followed inflammatory closing argument by the plaintiff's attorney. This relates back to the issue of Facklam's arrest records being in the case. A reading of the closing argument does not bear out this allegation.

■ Revco goes on to say the $25,000 award of actual damages on each count is far beyond the evidence and greater than shown in other reported cases involving false arrest or malicious prosecution. Revco states Simpson suffered minimal physical injuries and has not lost employment because of this incident. Although a close question, the $25,000 judgment for the false arrest, must be allowed to stand. Simpson suffered injuries, though minimal, had the physical confrontation with Facklam, along with being taken to the police station. As a matter of law it cannot be said this judgment was excessive. *Keenoy v. Sears Roebuck and Co.,* 642 S.W.2d 665, 672 (Mo.App.1982).

■ The other prong of this argument is the award of $100,000 of punitive damages on this count is likewise excessive. The trial court's refusal to alter these verdicts is affirmed. Punitive damages were properly submitted to the jury, and it was within their province to make such verdicts, to assess a penalty sufficient to punish Revco and deter others. *Holcroft v. Missouri-Kansas-Texas R. Co.,* 607 S.W.2d 158, 163–64 (Mo.App.1980). The jury was aware of the size and worth of Revco, and had before it the elements of malice or positive wrongdoing. *Id.* at 164. "There is no fixed relation between the amount of actual (nominal) damages and the amount of punitive damages awarded." *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 58 (Mo. banc 1981). Once decided as a matter of law the issue of punitive damages should go to the jury, the discretionary act will not be reversed except upon a clear showing of abuse of discretion. *Id.* at 58.

The judgment as to the false arrest count of $25,000 actual and $100,000 punitive damages is affirmed. Those portions of judgment on the malicious prosecution count, of $25,000 actual and $100,000 punitive damages are reversed and remanded for a new trial.

PRITCHARD and LOWENSTEIN, JJ. concur.

CLARK, J., dissents in separate opinion.

CLARK, Presiding Judge, dissenting.

I concur in the decision by the majority to reverse the judgment rendered for respondent on Count II of her complaint for malicious prosecution, but I respectfully dissent from the decision to affirm respondent's judgment on Count I laid on grounds of false arrest. As will hereafter appear, the basis for my view that the judgment must be reversed and the cause remanded for a new trial in its entirety applies with equal persuasion to both counts.

It should be noted as a prelude to this discussion that the trial error in point, the admission of arrest records of appellant's principal witness, the security guard, is conceded by the majority, as is the prejudicial impact which such evidence had on that witness's testimony. The sole issue upon which this dissent finds disagreement

with the majority opinion is whether appellant forefeited its right to appellate review of the error. In the restrictive circumstances of this case, this dissent asserts that an objection to the introduction of the arrest records during the course of the actual trial was unnecessary to preserve the error. This is not a case of plain error under Rule 84.13, in the usual sense, as the majority poses.

An account of the pre-trial, in-chambers conference at which the questioned rulings were made is necessary to an understanding of the unique situation which developed. The focus of attention is upon two motions presented for disposition before selection of the trial jury was to commence.

In the first, the defense sought an advance ruling that the plaintiff be precluded from mentioning or offering in evidence the records of arrests of the security guard, none of which had resulted in any conviction. These records were in the form of a multi-page document, apparently generated by the Kansas City, Missouri Police Department, and included record sheets from the FBI, the Missouri State Highway Patrol and the Kansas City police. The recorded arrests were for insufficient fund checks, non-support of wife and child, check fraud, fighting and a military charge of absent without leave.

The second motion presented to the court for in-chambers ruling was by the plaintiff. That motion, filed on the morning of trial without prior notice to defendant, sought sanctions against defendant under Rule 61.01 for failure to make discovery. The relief sought, alternatively, was a default judgment, preclusion of defendant from participation in the trial, payment of costs for discovery or allowing plaintiff to inform the trial jury that defendant had not complied with discovery. The motion made no mention of the arrest records or any sanction associated with that evidence.

As the conference progressed, the court expressed its dissatisfaction with delays on the part of defendant in complying with discovery orders and the tardy production of documents. It concluded by sustaining plaintiff's motion for sanctions and imposing the sanctions which the motion sought, the striking of defendant's pleaded affirmative defense, the allowance of plaintiff's attorney fees and the granting of permission to plaintiff to describe to the jury the failure of plaintiff to comply with discovery. This, however, did not conclude the court's recourse to punitive measures. In place of ruling defendant's motion to exclude the arrest records described above, on the merits, the court undertook, sua sponte, to order the arrest records admitted as a Rule 61.01 sanction. The court expressed itself as follows:

"In other words, plaintiff will be permitted to disclose and produce evidence that Ronald Facklam (the security guard) had prior military convictions for A.W.O.L., and also prior arrests which you've alluded to earlier as a sanction for failure to produce these documents."

The sanction of admitting prior arrest records was not sought by plaintiff in its motion nor has plaintiff ever contended that admissibility of evidence, otherwise not qualified, should be ruled on the basis of penalty sanctions.

As a consequence of the ruling described above, the police records in their entirety were admitted in evidence as plaintiff's exhibit 1 and various witnesses were questioned as to the effect which Facklam's arrests for circulating bad checks, fighting, committing fraud and abusing his family had upon his reputation generally and his performance of the duties of a security guard. Plaintiff's attorney also used the exhibit as a basis for describing Facklam as having FBI and state police "rap sheets."

The trial court was in error in the imposition of this latter sanction regarding the arrest records on at least two grounds. In the first place, sanctions under Rule 61.01 are authorized only upon motion and after notice to the party affected. Both the conduct which is to trigger the sanctions and the sanctions themselves are to be spelled out with specificity in order that the party

against whom the order is to be entered will be apprised of the consequences of non-compliance. *Hammons v. Hammons,* 680 S.W.2d 409, 411 (Mo.App.1984). Here, defendant had no notice whatever that the arrest records, unrelated in any way to the discovery alleged not to have been made, would be disclosed to the jury as a sanction or, even that such sanction was to be considered. The motion for sanctions itself provided no such notice and, as to the sanctions enumerated, was untimely because it was taken up without the notice provided in Rule 44.01(d). The sanction was, in short, procedurally defective because it was imposed without notice and without any motion which sought the penalty.

Secondly, the sanction in question was improperly imposed because the trial court had no authority to deny an otherwise meritorious objection to inadmissible evidence under the guise of imposing a sanction. The law in this area invests considerable discretion in the trial court, but that discretion is not without bounds.

A trial court has authority to impose sanctions against a party for violation of discovery rules and orders and the existence of prejudice to a party and what sanctions shall be imposed are originally for determination by the trial court in the exercise of its sound discretion. *Thomas v. Bank of Springfield,* 631 S.W.2d 346, 352 (Mo.App.1982). Each case must rest on its own facts in review of the action taken by the trial court and a determination of whether there has been an abuse of discretion. *Peoples-Home Life Insurance Co. v. Haake,* 604 S.W.2d 1, 5 (Mo.App.1980). On appeal from a discretionary ruling by the trial court, it is presumed the ruling was correct and the burden of showing abuse of discretion is on the appellant. *Vonder Haar Concrete Co. v. Edwards-Parker Inc.,* 561 S.W.2d 134, 138 (Mo.App.1978). Where the discretionary ruling by the trial court has been to impose sanctions for failure to make discovery, an abuse of discretion will be demonstrated if the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of

justice and indicate a lack of careful consideration. *McVeigh v. Faith Hospital Association,* 647 S.W.2d 615 (Mo.App.1983).

Rule 61.01 neither expressly nor by implication suggests that enforced admission of otherwise inadmissible evidence may be imposed as a sanction. Sanctions under the rule are essentially negative in effect, that is, they are prohibitory or preclusive. Courts are not at liberty to improvise discovery sanctions and write into the rules measures which the Supreme Court has not adopted. *Fuller v. Padley,* 628 S.W.2d 719, 722 (Mo.App.1982). The sanction here of admitting the arrest records has no support in the rule or the case law, it was against the logic of the circumstances, it was arbitrary and unreasonable and was an abuse of the trial court's discretion. *McVeigh v. Faith Hospital Association, supra.*

Notwithstanding the error involved in the Rule 61.01 sanction order, plaintiff contends the error is not available for appellate review because defendant did not preserve the point by objection to the arrest evidence at trial. The majority opinion adopts the same approach and holds that appellant has not preserved the point for conventional appellate review because it permitted the arrest record evidence to be introduced without objection. This treatment misconceives the substance of the point of error.

Although there is no disagreement that the arrest records were not proper evidence and were excludable on timely objection, the point of error here is not an erroneous ruling by the trial court on admissibility of evidence. It is the improper imposition of a sanction. Defendant had no opportunity or occasion to object to admission of the evidence based on the content of that evidence because the evidence was not received on its own merits but on the basis of the sanction. The trial court expressly advised defendant of this circumstance when it told counsel in the in-chambers conference that defendant's objection to arrest records being inadmissible evidence "will not be considered during trial". There

was, therefore, no omission by defendant in the preservation of its record, as the majority holds, when defendant did not object in the course of the trial to the court's erroneous imposition of a sanction. Appellant is entitled to appellate review of that error despite the absence of objection at trial to the evidence.

A more serious obstacle to review of the sanction error is, concededly, the failure by defendant to raise the question of the erroneous sanction in its new trial motion. As the following analysis will attempt to demonstrate, this omission is not fatal because, in the limited area of discretionary imposition of sanctions, preserved error and plain error are subject to the same standard of appellate review.

The standard by which a trial court's exercise of discretion will be reviewed in the consideration of a Rule 61.01 sanction is described in *McVeigh v. Faith Hospital Association, supra.* It is there said that an abuse of discretion in the imposition of sanctions will occur only where the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice. So, too, plain error review under Rule 84.13(c) is limited to situations where manifest injustice or a miscarriage of justice has resulted. The standards for review in either instance rise to the same level.

In consequence of the foregoing, a claim of sanction error is entitled to appellate consideration, whether preserved or not by an after trial motion, because of its definitional posture as plain error. The point is to be sustained if the court's sense of justice is shocked by a ruling clearly against the logic of the circumstances and is to be rejected if no injustice is perceived. To the writer, relief is required under this standard in the present case where, without notice or motion seeking that remedy by the plaintiff, the court undertakes sua sponte to inject inadmissible evidence into the trial under the guise of a discovery sanction.

The injustice sufficient to warrant reversal is supplied by the circumstances attendant upon the imposition of the sanction as previously described. In addition, if it be necessary that actual prejudice of a quantitative nature be added, as the majority concludes, that also appears. Contrary to the view expressed by the majority, the evidence in question was not cumulative of any proof or suggestion that the security guard had engaged in criminal conduct. The arrest records were uniquely qualified to portray the guard as having a criminal record, a subject fully exploited by plaintiff's counsel in the questioning of witnesses and in jury argument. Manifestly, this improper evidence engendered prejudice of the jury against defendant's principal witness and, in combination with the attitude of the trial judge demonstrated by the imposition of improper sanctions denied appellant the opportunity for a fair trial.

For these reasons, I would reverse the judgment on both counts and remand the case for a new trial.