David WOLFORD, Appellant-Cross-Respondent,

v.

UNITED STATES LEASING CORPORATION, Respondent-Cross-Appellant.

Nos. 48516, 48479.

Missouri Court of Appeals, Eastern District, Division Two.

June 4, 1985.

John D. Beger, Salem, for appellant-cross-respondent.

David M. Duree, St. Louis, for respondent-cross-appellant.

STEPHAN, Judge.

Plaintiff David Wolford appeals from a judgment for defendant notwithstanding a jury verdict of $22,500 in punitive damages in this malicious prosecution case. Defendant United States Leasing Corporation cross-appeals, seeking reversal of the judgment for $15,000 in actual damages. We reverse and remand for a new trial in light of the holding of the Missouri Supreme Court in the case of *Sanders v. Daniel International Corporation,* 682 S.W.2d 803 (Mo. banc 1984), which was handed down after this case had been argued and submitted.[1]

The underlying case involves the lease of an electronic cash register used by plaintiff in his restaurant business and leased to him by defendant. When plaintiff sold his business to Charles Brown, Sr., Charles Brown, Jr., and Emma Brown, he undertook to assign the lease to them. The assignment was completed in accordance with oral directions given to Wolford over the phone by Cathy Benton, Operations Secretary and Lease Processor at defendant's Oakbrook, Illinois office. The Browns did not make payments in accordance with the terms of the lease, and U.S. Leasing Corporation sued Wolford for the payments which came due after the assignment. That case, tried in June, 1982, resulted in verdict and judgment for Wolford. Thereafter, Wolford sued United States Leasing for malicious prosecution, with the results set out above.

Plaintiff Wolford's principal contention is that the establishment of a submissible case for actual damages under a malicious prosecution theory necessarily establishes a submissible case for punitive damages because malice is an element of the tort itself as well as a *sine qua non* for the recovery of punitive damages. The trial court's ruling on the issue of punitive damages would, therefore, be inconsistent with its ruling that Wolford had made a submissible case for actual damages. Defendant in its cross-appeal argues, inter alia, that neither lack of probable cause nor malice was shown, and thus the trial court erred in failing to grant defendant's motion for a directed verdict at the close of all the evidence.

We first address the impact of *Sanders* on the instant case. The holding of *Sanders* was aptly summarized by Judge Smith in *Shaffer v. Sears, Roebuck and Company,* 689 S.W.2d 683 (Mo.App.1985), as follows:

> It is safe to say that *Sanders v. Daniel International Corporation, supra,* created a monumental change in the law of malicious prosecution as it existed in

---

**1.** Both parties were requested to file supplementary briefs concerning the impact of *Sanders* on this case, and the parties accommodated the Court in this regard.

this state. The court there recognized that "malice," the heart of the cause of action, consists of three distinct concepts delineated by the court as "degrees." The first is "malice in fact" or "actual malice" consisting of ill will, spite, personal hatred, or vindictive motives. The second is "malice in its legal sense" embracing any improper or wrongful motive. Under that concept the defendant "must either proceed with an improper or wrongful motive or consciously act with such wanton disregard for the rights of others that a jury may, but need not, infer from such conduct an improper motive." *Sanders, supra,* at 810. The third degree of malice is "malice in law" consisting of a wrongful act done intentionally without just cause or excuse.

The Supreme Court recognized that under the case law of Missouri heretofore existing "malice in law" was sufficient to support an action for malicious prosecution and the award of punitive damages.... The court then held that in order to support a cause of action for malicious prosecution the evidence must establish either legal malice or actual malice—malice in law is insufficient. It specifically held that MAI 16.01 improperly defines the element of malice in such actions. MAI 16.01 was used in the case at bar as required at the time of trial.

The Supreme Court also addressed the question of the degree of malice necessary to support punitive damages. It concluded that actual malice is necessary which it articulated as "prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member." [*Sanders, supra,* at 815, 816 *quoting* E. Devitt & C. Blackmar, 3 Federal Practice and Instructions 85.11, at 121 (3rd ed. 1977)]. *Shaffer v. Sears, supra,* 685–686.

In the instant case, as in *Sanders* and *Shaffer,* MAI 16.01 was given to the jury to define the term " 'malicious' as used in these instructions." The verdict director used the word as an adverb and the punitive damage instruction used it as an adjective, thus permitting the jury to award both compensatory and punitive damages upon a finding of "malice in law."

In his supplemental brief, plaintiff Wolford seeks to distinguish *Sanders,* its companion case, *Lucas v. Daniel International Corporation,* 682 S.W.2d 820 (Mo. banc 1984), *Shaffer,* and *Weniger v. Famous-Barr Company,* 686 S.W.2d 553 (Mo.App. 1985), on the grounds that each of those cases grew out of unsuccessful criminal prosecutions, whereas the underlying case here was a civil proceeding against Wolford which resulted in a verdict and judgment in his favor.[2]

■ Cognizant though we are of several references in *Sanders* to the concept "that sound public policy dictates that the law should encourage the uncovering and prosecution of crime ..." *Id.,* 806, 814–816, we decline to rule that a lower degree of malice is required to make a submissible case of malicious prosecution of a civil action than a criminal charge. Persuasive policy arguments can also be marshaled for the view that citizens should be encouraged to settle their civil disputes by orderly use of the judicial system rather than resort to private means. Furthermore, it has long been the view that, "The institution of vexatious civil suits known to be groundless is governed by substantially the same rules as malicious prosecution of criminal proceedings." *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 602 (Mo.1955). The Supreme Court has seen fit to "bring Missouri back into step with the majority of jurisdictions," *Sanders, supra,* at 814, by requiring proof of legal malice to sustain the tort of malicious prosecution and proof of actual malice to warrant punitive

2. The underlying cases in *Shaffer* and *Weniger* involved prosecutions for municipal ordinance violations. Although such proceedings have quasi-criminal aspects, they are basically civil actions for recovery of a penalty. *City of Ferguson v. Nelson,* 438 S.W.2d 249, 255 (Mo.1969); *City of Cameron v. Stinson,* 633 S.W.2d 437, 439 (Mo.App.1982).

damages in such cases arising out of criminal prosecutions. We can discern no reason to apply a different set of standards where the underlying case happens to be civil.

Inasmuch as *Sanders* effected a change in the substantive law applicable to this case while it was pending on appeal, the principles of *Sanders* must be applied to the case at bar. *Shaffer v. Sears, supra,* 686–687. Such application requires reversal.

■ Turning to U.S. Leasing's arguments to the effect that Wolford failed to make a submissible case on the elements of malice and absence of probable cause even by pre-Sanders standards, we hold that the evidence was sufficient in these respects. The term "probable cause" as used in relation to the malicious prosecution of a civil action was defined in *Haswell v. Liberty Mutual Insurance Co.,* 557 S.W.2d 628 (Mo. banc 1977) and is thus instructive on the issue of whether there was evidence from which the jury could have found the absence thereof:

> [I]t can be said that probable cause for initiating a civil action consists of a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law.

*Haswell, supra,* at 633.
In resolving this issue, the jury may take into account not only those facts of which defendant is shown to have been aware, but also those which defendant could have learned by reasonable inquiry. *Id.* at 634.

In the instant case, there was evidence from which the jury could conclude that, as part of the sale of Wolford's restaurant, the purchasers agreed to take over the lease of the cash register. Wolford then telephoned Cathy Benton who was employed by U.S. Leasing as a "lease processor" to inquire as to how the assignment of the lease could be accomplished. She told him to prepare a letter for his

signature and those of the purchasers setting forth the basic details of the sale, the fact that the purchasers wished to assume the lease, and the serial number of the cash register. When the letter was signed and typed, he again called Cathy Benton and read the letter to her. She approved the contents, told Wolford to mail it to her, and told him he would no longer be responsible for payments under the lease. Wolford mailed the letter and made all payments through the date of the sale of his business, March 9, 1979. In a subsequent telephone conversation with Wolford, Ms. Benton acknowledged receipt of the letter. The Browns did not make the lease payments and Wolford received a letter in August, 1979, from U.S. Leasing demanding payment. Wolford referred the matter to his attorney who wrote a letter to U.S. Leasing setting forth the fact of U.S. Leasing's approval of the assignment and enclosing a copy of the letter to Ms. Benton. With little or no investigation of the facts relating to the assignment, U.S. Leasing filed suit against Wolford in August 1981. As stated, that case resulted in verdict and judgment for Wolford.

■ Although the outcome of that action is not conclusive, it is "some" evidence of want of probable cause. *Haswell v. Liberty Mutual Insurance Company,* 557 S.W.2d 628, 633 (Mo. banc 1977). Nevertheless, since lack of probable cause "involves proving a negative, slight proof thereof is all that is required to make a prima facie case." *Id.; Hughes v. Aetna Ins. Co.,* 261 S.W.2d 942, 945 (Mo.1953). Giving plaintiff the benefit of all inferences from the evidence relating to his efforts to assign the lease and the assurance he received from defendant's lease processor that he had done so properly, as well as defendant's failure to investigate plaintiff's defense to the claim as set forth in his attorney's letter, we are of the opinion that a submissible case on lack of probable cause was made. And, prior to *Sanders,* the element of malice was inferable from a showing of want of probable cause. *Haswell, supra,* at 635.

We do not hold that plaintiff made a submissible case under the standards set

by *Sanders*. It was, however, a showing adequate to support liability for actual and punitive damages under the law at the time the case was tried. As the court said in *Sanders* with respect to the status of the law prior to the issuance of that opinion, "[T]he malice in law standard for liability in a malicious prosecution also is used to satisfy the type of conduct necessary for punitive damages." *Sanders*, 682 S.W.2d at 814. Since we cannot conclude that plaintiff could not, upon re-trial, produce evidence sufficient to meet the requirements of "legal malice" for compensatory damages and "actual malice" for punitive damages, we reverse and remand for trial of all the issues. See *Shaffer v. Sears, Roebuck and Company*, 689 S.W.2d 683 (Mo.App.1985).

Such disposition of the case moots Wolford's principle argument in his appeal that the entering of judgment for defendant notwithstanding the verdict for punitive damages was inherently inconsistent and error.

In this appeal and cross appeal, other matters are raised which we do not address here for the reason that they may not arise, or can be avoided, upon re-trial.

Reversed and remanded.

SIMON, P.J., and STEWART, Senior Judge, concur.